**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**\*\* E-filed October 9, 2009 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FELITA SAMPLE,

               Plaintiff,

   v.

MONTEREY COUNTY FAMILY AND
CHILDREN SERVICES, et al.,

               Defendants.

_____/

No. C09-01005 HRL

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

**[Re: Docket Nos. 38, 39]**

       Pro se plaintiff Felita Sample instituted this lawsuit in March 2009.  Two amended

complaints later, defendants Monterey County Family and Children Services ("Monterey County")

and Yolanda Watson now again move to dismiss Sample's Second Amended Complaint ("SAC")

for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be

granted.[1]  Sample opposes the motion.[2]  Upon consideration of the moving and responding papers,

as well as the arguments presented at the motion hearing, this court GRANTS defendants' motion.[3]

///

[1] Defendants also moved to dismiss on other grounds, including abstention, preclusion, the *Monell*
doctrine for defendant Monterey County, and qualified or absolute immunity for defendant Watson.

[2] As she did with defendants' motion to dismiss her First Amended Complaint, Sample spends the
bulk of her opposition arguing that defendants must first file an answer.  As this court already
explained to her, a defendant may file a motion to dismiss before filing a responsive pleading.  *See*
Fed. R. Civ. P. 12.

[3] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all
proceedings in this matter may be heard and finally adjudicated by the undersigned.

**United States District Court**
For the Northern District of California

1

**LEGAL STANDARD**

2    A party may raise a lack of subject-matter jurisdiction by motion.  Fed. R. Civ. P. 12(b)(1).

3 If a court determines that it does not have subject-matter jurisdiction, it must dismiss the claim.

4 Fed. R. Civ. P. 12(h)(3).  A lack of jurisdiction is presumed unless the party asserting jurisdiction

5 establishes that it exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The

6 party challenging jurisdiction may do so based on the allegations in the complaint itself (a facial

7 attack) or on extrinsic evidence (a factual attack).  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

8 1039 (9th Cir. 2004).  When the moving party raises a factual challenge by presenting affidavits and

9 other evidence, the opposing party must also present affidavits or other evidence to satisfy its

10 burden of establishing subject-matter jurisdiction.  *Id.* (citing *Savage v. Glendale Union High Sch.*,

11 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

12    A court may also dismiss a complaint for failure to state a claim upon which relief may be

13 granted.  Fed. R. Civ. P. 12(b)(6).  The complaint's well-pled facts must "raise a right to relief

14 above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, only

15 plausible claims for relief will survive a motion to dismiss.  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.

16 Ct. 1937, 1950 (2009).  A claim is plausible if its factual content "allows the court to draw the

17 reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  A

18 plaintiff does not have to provide detailed facts, but the pleading must include "more than an

19 unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Indeed, allegations that are

20 conclusory are "not entitled to be assumed true."  *Id.* at 1951.  Even so, a court will liberally

21 construe pleadings by pro se parties.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

22    **DISCUSSION**

23 **A.    Background and Procedural History**

24    In 1995, Seaside Police arrested Sample for an outstanding warrant while she was in her car

25 with her three minor children.  Following her arrest, the police released her children to her aunt.

26 Sample alleges that while she was still incarcerated, Monterey County illegally removed her

27 children from her aunt's home without a warrant.  (SAC 1–2.)

28 ///

2

United States District Court
For the Northern District of California

1   In March 2009, Sample sued Monterey County for violations of the Fourth Amendment and

2   the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "Welfare

3   Reform Act"), alleging impropriety in her children's 1995 removal and subsequent placement with a

4   relative in Texas.  (Docket No. 1.)  Monterey County filed a motion to dismiss, but before the

5   motion was submitted, Sample amended her complaint as a matter of course and added a second

6   defendant: social worker Yolanda Watson.  *See* Fed. R. Civ. P. 15(a)(1).  The court then terminated

7   the motion to dismiss as moot.  (Docket No. 13.)

8   Sample's First Amended Complaint ("FAC") contended that Monterey County removed her

9   children in a non-emergency situation without a warrant in violation of the Fourth Amendment.

10  (Docket No. 10.)  It also alleged that Watson and "the court" violated the Welfare Reform Act by

11  sending her children to live so far away that she was effectively denied visitation rights.  Defendants

12  filed a second motion to dismiss, which this court granted based on a lack of subject-matter

13  jurisdiction, but with leave to amend.  (Docket No. 32.)

14  Sample timely filed her Second Amended Complaint ("SAC").  (Docket No. 33.)  The SAC

15  no longer pleads a claim based on the Welfare Reform Act, and also appears on its face to no longer

16  make any claim against defendant Watson.  Yet the SAC retains Sample's allegation that Monterey

17  County illegally removed her children and further alleges that it denied her due process by failing to

18  notify her of her children's removal hearing before the Superior Court of California for the County

19  of Monterey, Juvenile Dependency Court ("Dependency Court").

20  **A.      Request for Judicial Notice**

21  The court will first address the defendants' request for judicial notice of certified copies of

22  the Dependency Court's orders from the October 11, 1995 removal hearings for Sample's three

23  children.  (Request for Judicial Notice Exs. A–C.)  "A court may take judicial notice of 'matters of

24  public record' without converting a motion to dismiss into a motion for summary judgment," as

25  long as the facts are not subject to reasonable dispute.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689

26  (9th Cir. 2001); *see also* Fed. R. Evid. 201(b).  At the motion hearing, Sample confirmed that she

27  had received copies of the orders and that the names of her three children and court-appointed

28  counsel are the same as those in the orders.  Consequently, this court may take judicial notice of the

3

1  fact that the removal hearings occurred on October 11, 1995, and the fact that the Dependency Court

2  recorded certain events as taking place and made certain findings, as such facts are not subject to

3  reasonable dispute.  *See Lee*, 250 F.3d at 689–90.

4  **B.      Subject-Matter Jurisdiction**

5        This court previously held that the *Rooker-Feldman* doctrine applied to Sample's FAC and

6  dismissed it for lack of subject-matter jurisdiction.  (Order 3–5, Aug. 7, 2009.)  Defendants argue

7  that because Sample still alleges an error by the Dependency Court and seeks relief from that court's

8  judgment, *Rooker-Feldman* also denies jurisdiction over the SAC.  (Mot. 3.)  Sample counters that

9  this court does have subject-matter jurisdiction due to the applicability of an exception to the

10  doctrine.  Because defendants have presented evidence in their motion that go beyond the face of the

11  complaint, this court will evaluate it as a factual challenge to subject-matter jurisdiction.

12        Federal district courts do not have appellate jurisdiction over state court judgments.  *See* 28

13  U.S.C. § 1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).  One

14  application of this general rule is the *Rooker-Feldman* doctrine, which denies subject-matter

15  jurisdiction over claims involving a prior loss in state court where the plaintiff asserts an injury

16  caused by the state court's legal error and requests as a remedy relief from the state court's

17  judgment.  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004).  When a plaintiff puts

18  forth such a "forbidden de facto appeal" of a state court judgment, *Rooker-Feldman* then also bars

19  claims that are " 'inextricably intertwined' with an issue resolved by the local court in its judicial

20  decision."  *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).

21        Although Sample emphasizes her allegation against Monterey County, a review of the SAC

22  shows that the crux of her complaint continues to be that the Dependency Court decided to *keep* her

23  children removed after Monterey County took them from her aunt's home.[4]  For example, she

24  pleads that the Dependency Court "erred in its interpretation of the removal of children without a

25  warrant" and that Monterey County "has not tried one time to give my [remaining minor] child back

26  to me."  (SAC 6:19–21; 7:6–10.)  Furthermore, the Dependency Court's orders indicate that during

27

28  _____
[4] Sample reinforced this conclusion at the motion hearing, as she again alleged that defendants violated the Welfare Reform Act by sending her children to live so far away that she could not afford to visit them—even though the SAC no longer includes such a claim.

United States District Court
For the Northern District of California

the removal hearings, it considered whether Monterey County's removal was proper.  (Request for Judicial Notice Exs. A–C.)  Thus, Sample's allegation that Monterey County illegally removed her children is "inextricably intertwined" with the Dependency Court's overall decision to keep her children removed.

Accordingly, Sample's claims still implicate *Rooker-Feldman*: she lost custody of her children though a decision of the Dependency Court in 1995, prior to her federal complaint; she asserts that this loss of custody was, in part, because that court erred in its decision upholding Monterey County's removal process; and she requests as a remedy the restoration of custody for her remaining minor child.  Therefore, just as with the FAC, this court would have to review and reject the Dependency Court's removal decision in order to evaluate her claims.  As such, it does not have subject-matter jurisdiction.

Nonetheless, Sample, apparently inspired by this court's discussion in its order dismissing the FAC, now alleges the "extrinsic fraud" exception to *Rooker-Feldman*.[5]  But this exception only applies if the "plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud."  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004).  If the proceeding at issue is instead " 'merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal,' " the exception does not apply.  *Id.* (quoting *Barrow v. Hunton*, 99 U.S. 80, 82–83 (1878)).

Sample alleges that Monterey County "used 'extrinsic fraud' " when it held the removal hearing while she was in jail without notifying her so she could attend.  (SAC 3:11–18.)  She says that as a result of this fraud, she was denied due process.  Yet the Dependency Court's decision to keep Sample's children removed would have been based on evidence such as the reasons the children were removed, the need for continued detention, the services available to the children, and whether one of several specific grounds existed for the detention.  Cal. R. Ct. 1444–45 (1995); *see*

---

[5] The discussion of extrinsic fraud in the August 7, 2009 order was directed to Sample's allegation in the FAC that defendant Watson had withheld information from the Dependency Court when it decided to send Sample's children to Texas in 1997.  (Order 5.)  Sample makes no allegations of fraud by Watson in her SAC.

United States District Court
For the Northern District of California

*also* Cal. Welf. & Inst. Code § 319 (1995).  The applicable court rules even note that "[i]n making the findings prerequisite to an order of detention, the court may rely *solely* upon written police reports, probation or social worker reports, or other documents."  Cal. R. Ct. 1444(b) (1995) (emphasis added).  As a result, Sample is not alleging extrinsic fraud on the state court—instead, she seeks to set aside that court's judgment on account of its alleged error when it made its decision after reviewing the evidence.  Consequently, the "extrinsic fraud" exception does not apply and Sample has failed to establish that this court has subject-matter jurisdiction over her claims.

**C.    Alternative Grounds for Dismissal**

**1.    Statute of Limitations**

Even if this court had subject-matter jurisdiction, Sample's complaint fails to state a claim upon which relief may be granted because she filed it well outside the applicable statute of limitations and does not plausibly plead any tolling of the statute.  Although the SAC does not specify the date when Monterey County removed her children from her aunt's home, it does assert that Monterey County took them when she "was in custody in Monterey County Jail" following her arrest in 1995.  (SAC 2:22–25.)  Furthermore, the Dependency Court orders for the children's removal hearings are dated October 11, 1995.  (Request for Judicial Notice, Exs. A–C.)  Sample then confirmed at the motion hearing that the events in her complaint occurred in 1995.

Sample's claim appears to be most fairly read as a civil rights claim under 42 U.S.C. § 1983, as she alleges that Monterey County illegally took her children without a warrant and denied her due process.  (SAC 3:15–16.)  Section 1983 does not have its own statute of limitations, so "courts apply the most closely analogous statute of limitations under state law."  *Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989) (citations omitted).  In California, courts apply the state's statute of limitations for personal injury actions to § 1983 claims, which was one year in 1995.  *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711–12 (9th Cir. 1993); *see also Aguilera v. Heiman*, 95 Cal. Rptr. 3d 18, 23 (Ct. App. 2009) (holding that the 2003 revision of the California Code of Civil Procedure, which extended this limitation to two years, was not retroactive).[6]

---

[6] At the motion hearing, Sample argued that there was *no* time limit for her claim, citing to *Weeks v. United States*, 232 U.S. 383 (1914), in support.  Although *Weeks* establishes warrant requirements under the Fourth Amendment, it does not address statutes of limitation.

A civil rights claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (noting that federal law, not state law, applies for accrual of civil rights claims).  Sample had reason to know of the injury of which she alleges—that her children were taken illegally—when she learned in 1995 that Monterey County removed her children.  The deadline for her to file this complaint was then one year later, in 1996.  However, Sample did not file her complaint until 2009—a delay of approximately thirteen years.  As a result of this delay, Sample must plead sufficient facts to raise a plausible claim of equitable tolling under California law for her claim to survive a motion to dismiss.  *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *TwoRivers*, 174 F.3d at 991.

Even though this court's August 7, 2009 order told Sample to address the statute of limitations in any amended complaint (Order 6), the SAC is devoid of *any* facts on this issue.  After defendants noted this deficiency in their moving papers, Sample attempted to address the problem in her opposition.  She asserts that after her children were removed, she had a "mental health breakdown" and that "[o]nly through therapy . . . determined that her children were taken illegally." (Opp'n 3.)  Yet ignorance of the law alone will not equitably toll a statute of limitations.  *See, e.g.*, *Hogar Dulce Hogar v. Cmty. Dev. Comm'n of Escondido*, 2 Cal. Rptr. 3d 497, 503 (Ct. App. 2003); *see also Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).  Furthermore, this explanation is just a variation on what she told this court prior to its dismissal of the FAC: that the delay was because she had "just found out about her constitutional rights."  (Order 6.)  Even accepting as true that Sample was unaware of her rights until 2009, the law does not provide for tolling of the one-year statute of limitations merely because therapy later apprised her of the status of the law.

Sample also asserts no facts, even read liberally, that plausibly suggest her mental health status somehow justified such a lengthy delay.  Again, the SAC pleads no facts on this point.  Her opposition states that her "mental health breakdown" occurred in the years "since" her children were removed—and thus *after* the accrual of this action—so she cannot rely on this potential disability to toll the statute.  (Opp'n 3:20–22); Cal. Code Civ. P. § 357 ("No person can avail himself of a disability, unless it existed when his right of action accrued.")  Nor does she allege that her mental

7

**United States District Court**
For the Northern District of California

1   health itself somehow prevented her from filing a complaint on time.  *See* Cal. Code. Civ. P. § 352

2   (providing for tolling if the plaintiff was "insane" at the time of accrual).  No other tolling

3   provisions under California law appear to apply to her claim.  As a result, the allegations in the SAC

4   cannot be read to plausibly toll the statute of limitations from 1996 to 2009.

5         **2.**      **Failure to State a Claim**

6         Even had Sample appropriately alleged tolling of the statute of limitations, the SAC still fails

7   to raise a plausible claim for relief.  Sample's primary claim is that Monterey County removed her

8   children without a warrant in a non-emergency while she was in jail.  Yet she offers nothing more

9   than conclusory statements in support of her claim, and she even acknowledges that a parent's

10   incarceration is one circumstance in which California law allows state social workers to remove

11   children without a warrant (SAC 2:1–7).

12         In addition, the Dependency Court's findings flatly contradict her allegation.  The court rules

13   in effect at the time required the Dependency Court to "determine whether reasonable efforts to

14   prevent or eliminate the need for removal were made."  Cal. R. Ct. 1445 (1995).  The court may find

15   that reasonable efforts were made, that reasonable efforts were not made, or that a lack of effort was

16   reasonable "because of the emergency nature of the removal."  *Id.*  In this case, the Dependency

17   Court found that "[a]ny lack of preplacement preventive efforts was reasonable because of the

18   *emergency nature of the removal*."  (Request for Judicial Notice, Exs. A–C (emphasis added).)

19         The Dependency Court's orders similarly contradict Sample's claim that Monterey County

20   failed to give her notice of the removal hearings.  The orders indicate that "[n]otice of the Hearing

21   was given as required by law" and even that Sample was present at the hearings, was represented by

22   counsel, and "personally" denied the allegations of the petition.  (*Id.*)  When this court questioned

23   Sample on this point at the motion hearing, she admitted that she could not remember whether she

24   had been present or not.  Even more, when told that the Dependency Court orders indicated she had

25   been at the removal hearings, she responded, "Well, then, I was there."

26         Finally, the SAC fails to raise any allegations whatsoever against defendant Watson.

27   Sample's claim against Watson in the FAC was based on the Welfare Reform Act.  (FAC 4–6.)  The

28   SAC no longer pleads a violation of this Act and Watson's name appears nowhere in it.  Sample has

1    thus failed to state a plausible claim for relief against either defendant.

2                                   **CONCLUSION**

3         Sample amended her complaint once as a matter of course, and this court allowed her to

4    amend a second time to state a claim over which this court had subject-matter jurisdiction and to

5    address defendants' other grounds for dismissal. Sample has failed to remedy these deficiencies,

6    which still persist in the SAC, and the court does not believe that allowing Sample the opportunity

7    to amend her complaint a fourth time would produce a different result. Consequently, the court

8    GRANTS defendants' motion to dismiss WITH PREJUDICE. Judgment will be entered for

9    defendants.

10

11    **IT IS SO ORDERED.**

12    Dated: October 9, 2009

13                                             _____
                                       HOWARD R. LLOYD
                                       UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

9

**C 09-01005 Notice will be electronically mailed to:**

Irven L. Grant     granti@co.monterey.ca.us, mcmillincb@co.monterey.ca.us

**Notice will be send by other means to:**

Felita Sample
1406 Sturgeon Street #B
San Francisco, CA 94130

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

United States District Court
For the Northern District of California